Robert Azevedo, et al. [1] v. Commissioner. Azevedo v. Commissioner
Docket Nos. 49896, 49928, 49929.
United States Tax Court
T.C. Memo 1956-109; 1956 Tax Ct. Memo LEXIS 186; 15 T.C.M. (CCH) 543; T.C.M. (RIA) 56109; May 7, 1956
*186 Income: Taxable to individuals or to a corporation. - Petitioners, Robert Azevedo and Paul Kershaw, Jr., entered into an executory contract of sale with Robert's father, John, on December 1, 1945, under which John agreed to sell winery premises and inventory to them at such time as the petitioners should receive basic permits to make and sell wine and spirits, and further agreed that pending the receipt of the permits, the petitioners would be paid as salary, in compensation for their services in operating and managing the winery, the earnings of the winery business. Petitioners managed and operated the winery, and the inventory of wine produced under their operations was sold before July 1, 1946, from which earnings were derived. Petitioners organized a corporation in March 1946 having the same name as the business which they managed. They contend that earnings from sales of wine are taxable to the corporation. Held, that the corporation did not own an inventory of wine prior to the sale thereof; that the proceeds from sales of the wine was not the corporation's income; and that the net earnings of the winery were compensation to petitioners under the agreement. Respondent's determinations *187 sustained. Robert C. Burnstein, Esq., 414 Thirteenth Street, Oakland, Calif., for the petitioners. Edward H. Boyle, Jr., Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiences in income tax for the year 1946 as follows: Docket No.
Taxpayer
Deficiency
49896
R. Azevedo
$65,020.05
49928
I. Kershaw
27,108.10
49929
P. Kershaw
25,943.07
The chief question is whether net profit of $202,113.82 from sales of wine during the months March through June 1946 is taxable in equal amounts to Robert Azevedo and Paul Kershaw, Jr., as the Commissioner has determined, or is taxable to a corporation. Findings of Fact In 1946 Robert Azevedo resided in Santa Cruz, California, and he was unmarried. He filed an individual income tax return with the collector for the first district of California. In 1946 Paul and Irene Kershaw were husband and wife and they resided in Sacramento, California. They filed individual returns with the collector for the first district of California. Irene is involved in these proceedings only because she and her husband reported income for 1946 on *188 a community property basis. Since the issues to be decided relate to Robert Azevedo and Paul Kershaw, they are referred to hereinafter as the petitioners. John Azevedo is Robert's father. John is a construction contractor and he was engaged in the construction contracting business in 1945. John Azevedo, in 1945 and before, owned realty and 5 buildings thereon at Mills Station near Sacramento. This property is a winery known as Mills Winery. Before July 1945, John leased the winery to Christian Brothers Winery, and John did not have the permits required to make wine. The adjusted basis of the property to John was $100,000 in 1945. At about the end of June 1945, the lease of the winery was terminated and in July 1945, the necessary basic permits to make wine and distilled spirits were issued to John by the Federal Alcohol Tax Unit of the Bureau of Internal Revenue and the California State Board of Equalization. John then commenced operations as a sole proprietor doing business under the name of Mills Winery. In July, John intended to operate the winery and he called in Paul Kershaw, a salesman, to take care of sales. Kershaw had been working in Oakland, California. In the fall of *189 1945, John borrowed $440,000 from the Capital National Bank of Sacramento for the purpose of buying grapes for the making of wine and he gave his note to the bank for the loan. Also, a checking account was established in Capital National Bank for the operation of Mills Winery. John Azevedo was the only person authorized to sign checks on and withdraw funds from this account during 1945 and until about August 1, 1946. John's son, Robert, is a winemaker. Prior to the transactions involved here he graduated from the University of California, College of Agriculture. In about August 1945, John made an oral arrangement with Robert and Kershaw under which they were to engage in activities at the winery during the crush in the fall of 1945. Kershaw bought grapes for the fall 1945 crush. Robert performed the services of winemaker. John, although engaged in the contracting business, was present at the winery to supervise some construction work at the winery, and, also, he attended to financial transactions with Capital National Bank. The cost of the construction work at the winery was $10,000. By December 1, 1945, the fall crush was completed and an inventory of wine was in process of *190 manufacture. There remained to be done the finishing processes of making the wine and the sale thereof. No wine was sold during 1945. All of the wine produced from the crush in the fall of 1945 was sold during four months in 1946, namely, during March, April, May, and June. On or about December 1, 1945, after the fall crush but before the sale of any of the wine, the agreement set forth below was made by John Azevedo, the seller, with Robert and Kershaw, the purchasers, and was executed by each party. At the same time, Robert and Kershaw executed an agreement to protect John if there should be any judgments against him on account of any obligations he incurred from August 1, 1945, until the date of the actual transfer of the physical assets of Mills Winery to Robert and Kershaw, which date was stated to be the time that the latter received the Federal basic permits under which they could operate the winery. The agreements dated December 1, 1945, are as follows: "AGREEMENT "This agreement, made this 1st day of December, 1945 by and between John Azevedo, Party of the first part, hereinafter called 'Seller' and Robert Azevedo and Paul Kershaw, Jr., Parties of the Second Part, hereinafter *191 called 'Purchasers'. Witnesseth: "Whereas, first party is desirous of selling to second parties that certain winery known as 'Mills Winery' located at Mills Junction, California, and all the assets pertaining thereto; and, "Whereas, second parties are desirous of purchasing the same; "Now, therefore, in consideration of the mutual promises of the parties hereto, this agreement; "1. It is mutually understood and agreed by and between the parties that seller will sell to purchasers that certain winery known as Mills Winery, located at Mills Junction, California, together with all the assets pertaining thereto for the adjusted cost of said winery, plus all other of said winery, including inventory at cost price. "2. Purchasers agree to purchase said winery hereinbefore mentioned under the terms and conditions stated in paragraph 1, above. "3. It is mutually understood and agreed that seller shall remain the owner of said winery until such time as the purchasers shall be permitted to receive in their name certain basic permits which will enable them to purchase and own said winery and operate the same; provided, however, that purchasers shall, on January 1, 1946, operate and *192 manage said winery for seller until said time as purchasers shall be able to make actual purchase of said winery, provided further that the compensation for said management, purchasers shall receive as salary the earnings of said business during said period of management. "4. It is further mutually agreed and understood by the parties hereto that unless the above mentioned permits are issued in the names of purchasers on or before January 1, 1947 this agreement shall at the option of seller be declared null and void. "5. It is hereby understood and agreed by the parties hereto that this agreement shall apply not only to the parties thereto but to their assigns. "In Witness Whereof, the parties hereto have hereunto set their hands the day and first above written. Signed
John Azevedo
Robert Azevedo
Paul Kershaw, Jr.
"This agreement made and entered into this 1st day of December, 1945, by John Azevedo doing business as the Mills Winery and, Paul Kershaw, Jr., and Robert J. Azevedo. "Whereas for a consideration John Azevedo is selling the Mills Winery and all its assets to Paul Kershaw, Jr., and Robert J. Azevedo. "And, whereas as owner and operator *193 of the Mills Winery, John Azevedo has contracted obligations since August 1st, 1945, Now as part of the consideration above referred to Paul Kershaw, Jr., and Robert J. Azevedo agree to assume and pay any judgment or judgments which may arise from Court action or otherwise against John Azevedo or the Mills Winery during 1945 and up to and including date of actual transfer of the physical assets of the Mills Winery which will be the time that the United States Government issues to Paul Kershaw, Jr., and Robert J. Azevedo a basic permit to operate said Winery." The Commissioner determined, and the petitioners concede, that the net profit derived from the sales of wine was $202,113.82, which amount is computed as follows: Gross sales
$693,114.80
Cost of sales
445,467.09
Gross profit
$247,647.71
Total expenses
45,533.89
Net profit
$202,113.82
Robert and Kershaw paid John $110,000 in installments during March, April, June, and July. The payments were made out of the proceeds of the sales of wine which were made during the months March through June. The sum of $110,000 represented John's adjusted basis of the Mills Winery property plus $10,000 for improvements; *194 it also was the consideration stated in the purchase and sale agreement dated December 1, 1945. The payments to John were made on the dates and in the amounts set forth below: March 22, 1946
$ 5,000
April 17, 1946
10,000
June 24, 1946
45,000
July 4, 1946
50,000
$110,000
On July 4, 1946, when the payment of $50,000 was made to John, he was still on the premises of the Mills Winery. Capital National Bank was repaid the loan made to John, $440,000, out of the proceeds from the sales of the 1945 crush which were made in the months March through June 1946. The sales were bulk sales in large quantities to Italian Swiss Colony Wine Company, Petri Wine Company, and Christian Brothers Wine Company. The invoices for the sales bore the name, "Mills Winery." On March 4, 1946, Kershaw and Robert caused to be filed with the Secretary of State of California articles of incorporation of a corporation named Mills Winery. In the articles of incorporation the directors named were Kershaw, Robert Azevedo, and James M. Popper. Mills Winery, a California corporation, was organized on March 4, 1946. Mills Winery, a California corporation, is referred to hereinafter as Mills *195 Winery, Inc., or as the corporation. The directors held their first meeting on March 20, 1946. At this meeting by-laws were adopted, Robert was elected president of the corporation, and Kershaw was elected vice-president, secretary, and treasurer. A special meeting of the directors was held on August 12, 1946, at the Mills Winery, the office of the corporation. At this meeting resolutions were adopted authorizing the following: Authorization was given for the issuance of 20,000 shares of capital stock of the par value of $100 per share. Authorization was given for the issuance of 10,000 shares to Robert and 10,000 shares to Kershaw. The vice-president was authorized to file an application to the Corporation Commissioner of California for a permit authorizing the issuance of 20,000 shares, and the issuance of 10,000 shares, each, to Robert and Kershaw. Also, the following resolutions were adopted: * * *
"Whereas, the consideration to be paid to this corporation by the above named persons for the issuance of said stock shall be in cash and other considerations other than money, "Now therefore, Be It Resolved, that upon the issuance of a permit by the Corporation Commissioner, *196 Department of Investment, for the issuance of such shares, that Robert J. Azevedo and Paul Kershaw, Jr., shall pay to this corporation for the obtaining of a deed for the real property upon which the business is to be operated by this corporation is located, the sum of $55,000 each or a total of $110,000 in cash, and that further Robert J. Azevedo and Paul Kershaw, Jr., shall in addition to the aforementioned sum, pay to one John Azevedo, an individual, who previously operated Mills Winery as an individual, the sum of $109,500 each or a total of $219,000, which is the actual cost expended for the recent improvements and installations on the property in which the business of this corporation is to be located, which said improvements at the above cost were expended on behalf of John Azevedo and that for the promotion and development of enterprises to be operated by this corporation as so developed and promoted by Robert J. Azevedo and Paul Kershaw, Jr., is reasonably equal to the sum of $735,500 for each person above named. "It Is Further Resolved that with the cash payments as herein mentioned and the defraying of improvement and construction costs as herein mentioned and the services *197 rendered, the value of which has been fixed by this corporation, each of the above named persons shall have contributed the sum of $1,000,000 to this corporation, which will entitle them to the delivery by this corporation when the same is authorized of 10,000 shares each of the capital stock of this corporation." On September 18, 1946, application on behalf of Mills Winery, Inc., for permission to issue 20,000 shares of capital stock, 10,000 shares, each, to Robert and to Kershaw, was filed with the California Corporation Commissioner. In this application, request was made to issue 13,500 shares (part of the 20,000 shares) in "promotional stock" (the value of which was fixed at some undisclosed sum in minutes of the corporation), by reason of the promotional services rendered by Robert and Kershaw, of which one-half, or 6,750 shares, each, were to be issued to Robert and Kershaw (part of the 10,000 shares to be issued to each) for their respective promotional services. Such promotional stock, having a par value of $1,350,000, if authorized and issued, was to represent paid-in capital of the corporation. On May 1, 1946, Treasury Form 698 had been executed on behalf of John Azevedo, *198 doing business as "Mills Winery", and filed with the Federal Alcohol Tax Unit. In the Form 698, John Azevedo advised the Alcohol Tax Unit that he intended his basic permits to conduct a winery for the manufacture of wine and the distilling of fruit spirits to be discontinued as of the date similar basic permits and licenses were issued to Mills Winery, a California corporation. On May 3, 1946, the corporation, Mills Winery, Inc., made application to the Federal authorities on Treasury Forms 1634 and 1639 for basic permits to produce and blend wine and to distill and sell distilled spirits. Attached to the applications was the following sworn statement: "Applicant's place of business will be purchased from John Azevedo, an individual and the present owner, when proper permits are received by applicant to engage in the operations of a Fruit Distillery." A wine producer's and blender's basic permit, Form 1635, and a distiller's basic permit, Form 1640, were issued by the Alcohol Tax Unit of the Bureau of Internal Revenue under date of August 13, 1946, effective August 7, 1946. On about August 12, 1946, but before that date, the California State Board of Equalization issued to Mills *199 Winery, Inc., a wine manufacturers' license and a distilled spirits manufacturers' license. As of August 12, 1946, or a few days before, the corporation therefore had the basic Federal and state permits to engage in the business of manufacturing and selling wine and distilled spirits. By a grant deed date June 21, 1946, John Azevedo and Frances Azevedo, as grantors, granted to Mills Winery, a California corporation, all the real property upon which the Mills Winery premises and equipment were located. The deed was delivered by the grantors to a title company in the County of Sacramento, State of California, to be held in escrow for the benefit of the grantee, namely, Mills Winery, Inc. The escrow instructions filed by the grantor with the title company do not contain information regarding the delivery of the deed, nor the length of time the deed was to be held in escrow. The record in these cases does not establish how long the deed was held in escrow or the date when it was delivered to Mills Winery, Inc. The deed was recorded with the Recorder of Sacramento County on November 23, 1946, in volume 1294 at page 351, of his official records. With respect to the issuance of the capital *200 stock of Mills Winery, Inc.: On October 2, 1946, the California Corporation Commissioner granted permission to the corporation to issue 20,000 shares of capital stock (including the 13,500 shares of promotional stock), 10,000 shares, each, to be issued to Robert Azevedo and to Paul Kershaw, subject to the restriction that the stock be placed in escrow. Thereafter, the corporation issued 10,000 shares of its capital stock, each, in the names of Robert and Kershaw but the stock was immediately placed in escrow with an attorney, Robert C. Burnstein. At the time of the trial of these cases, all of the stock was still held by Burnstein in escrow. The holding of the stock in escrow was in accordance with certain requirements of the laws of California relating to corporations and the issuance of corporation stock. After the organization of Mills Winery, Inc., on March 4, 1946, various activities were carried on by Robert and Kershaw as officers and directors of Mills Winery, Inc., among which were the following: On April 9, 1946, Kershaw, on behalf of the corporation entered into an agreement with certain individuals under which the corporation agreed to make distilled fruit spirits during *201 the 1946 fruit season from fruit juice and pulp to be furnished by the individuals and to pay the individuals a part of the proceeds from the sale of the distilled fruit spirits. On April 9, 1946, the corporation did not have title to the winery property and equipment. In April 1946, Mills Winery, Inc., employed A. H. Becker as the managing employee to conduct the office affairs of the corporation. As such employee, Becker continuously, from April 1946 to January 1950, dealt with growers, wine manufacturers, distillers, fruit processors, wine brokers, and all persons interested in or connected with the fruit processing industry. On May 11, 1946, and on May 23, 1946, Robert, as president of the corporation, entered into written agreements with Southern Pacific Company, a railroad company, whereby Southern Pacific, as licensor, granted Mills Winery, Inc., rights to private road crossings over tracks of Southern Pacific, "at grade", at certain locations. On May 11 and May 23, 1946, the corporation did not have title to the realty where the winery was located or where the rights of way covered by the agreements with Southern Pacific were located. From June 1946, to and including *202 the month of August 1946, certain improvements, additions and alterations, were being made by various general contractors, iron workers, designing engineers, and plant engineers relating to the winery premises and the equipment located thereon, all of which were paid for by the corporation after the date of its incorporation, such payment being made from funds arising out of proceeds from sales of wine made from the 1945 crush. On August 8, 1946, the corporation filed with the collector of internal revenue, Form SS-4, Application For Employer's Identification Number. The preceding identification number had been issued to John Azevedo, doing business under the name, "Mills Winery." Notifications of change in ownership of insurance policies and motor vehicles were made by the corporation during or subsequent to August 1946. At all times material, there was a single checking account in the Capital National Bank of Sacramento, California, for the business operations of the business carried on under the name of Mills Winery. During the period of August 1, 1945 to August 1, 1946, John Azevedo had the sole authority to sign checks and withdraw funds from this account. On and after August 1, 1946, Robert *203 Azevedo and Paul Kershaw were granted permission to withdraw funds from the bank account on behalf of the corporation. All bank loans, warehouse obligations, and expenditures for improvements, alterations and additions made on the winery premises and on the equipment therein, that were paid prior to August 1, 1946, were paid by checks drawn by John Azevedo on the single bank account. All payments that were made after August 1, 1946, were paid by checks drawn by Kershaw on the same bank account. The records of the Commissioner of Internal Revenue do not show that a partnership return of income, Form 1065, was filed by a partnership doing business under the name of Mills Winery for any period or for the period August 1, 1945 to March 1, 1946. In the individual income tax returns for 1946 of Robert, Paul Kershaw, and Irene Kershaw, no income was reported from the sales of wine made from the 1945 crush, which net income is involved in these cases, and no income was reported as the distributive share, respectively, of Robert and of Paul Kershaw of the earnings of a partnership named Mills Winery. The individual income tax return of Paul Kershaw for 1946 reports receipt of salary from *204 Mills Winery, Inc., in the amount of $10,000. The individual return of Robert for 1946 does not report the receipt of any salary payments by the corporation. A corporation income tax return, Form 1120, was filed for Mills Winery, Inc., for the taxable period beginning March 4, 1946. The return was prepared by National Accounting Service of Los Gatos, California. In this corporation income tax return, net income was reported in the amount of $225,805.61. The return was signed by Kershaw as an officer of the corporation on May 7, 1947, and it was filed on May 15, 1947. In the return earned surplus and undivided profits were stated to be $225,805.61, and the only officer reported as receiving compensation was Kershaw for whose salary a deduction of $10,000 was taken. Also, in this corporation return inventory at the beginning of the taxable period was stated to be $445,467.09. An amended corporation return for the same fiscal period as the original return was executed on May 26, 1947 by Paul Kershaw. In this return net income was reported in the amount of $203,432.29, earned surplus and undivided profits was reported in the amount of $203,432.29, and a deduction of $30,000 was taken *205 for Kershaw's salary. Opening inventory was stated to be $445,467.09 at March 4, 1946. The figures representing the selling prices of the wine made from the 1945 crush and the expenses applicable thereto were included in the income and expenses which were set forth in the original return and in the amended return filed for the Mills Winery corporation for the fiscal period March 4, 1946 to March 3, 1947. The profits from the sales of wine made from the 1945 crush were "picked up" as profit of the corporation in its returns for the above period. A corporation income tax return for the fiscal period March 1, 1951 to February 29, 1952, was filed for Mills Winery, Inc., the corporation. The balance sheet in the return, Form 1120, reported no outstanding capital stock at the beginning of the taxable period. The balance sheets in the corporation returns for the fiscal period March 4, 1946 to March 3, 1947, did not report any outstanding capital stock. In the minutes of the special meeting of the directors of Mills Winery, Inc., on August 12, 1946, a resolution was adopted which provided, inter alia, that Robert and Kershaw were to pay to the corporation in cash $55,000, each, or $110,000 *206 for purpose of obtaining the deed from John and Frances Azevedo to the real property where the Mills Winery is located. The sum of $110,000 was never paid to the corporation by Robert and Kershaw. A liability of $110,000 owed by Robert and Kershaw was first reflected in the balance sheet in the corporation income tax return filed for the period March 1, 1951 to February 29, 1952, as an item of capital stock. Mills Winery, Inc., is still in existence. On October 17, 1946, Robert Azevedo sold all of his stock in Mills Winery, Inc., to Paul Kershaw, Jr., for $50,000. On February 26, 1952, Robert Azevedo executed and filed a consent extending to June 30, 1953 the time within which the income tax for the year 1946 might be assessed. On January 22, 1952, Paul Kershaw, Jr., executed and filed a consent extending to June 30, 1953, the time within which the income tax for the year 1946 might be assessed. On January 22, 1952, Irene Kershaw executed and filed a consent extending to June 30, 1953, the time within which the income tax for the year 1946 might be assessed. The individual returns for 1946 of Robert Azevedo, Paul Kershaw, Jr., and Irene Kershaw were filed on March 7, 1947, March 15, 1947, and *207 March 20, 1947, respectively. The notices of deficiencies which have given rise to these cases were mailed by the Commissioner on May 13, 1953. Title to the real property of the winery and to the improvements did not pass from John and Frances Azevedo to Mills Winery Corporation until sometime after August 12, 1946. John did not sell the wine inventory from the 1945 crush to Robert and Kershaw or to the corporation before the wine was sold. Robert Azevedo and Paul Kershaw, Jr., in the agreement of December 1, 1945, agreed to buy the winery property and real estate as individuals. Under the agreement of December 1, 1945, it was agreed that on and after January 1, 1946, Robert and Kershaw would operate and manage the winery for John Azevedo until such time as they, the purchasers, should be able to make the actual purchase of the winery, and that Robert and Kershaw should receive as their salaries and compensation for their services the earnings of the winery business during the period of their management. During the period January 1, 1946 to August 6, 1946, the net earnings of the winery business known as Mills Winery amounted to $202,113.82, and these earnings were derived *208 from the sales in the months March through June 1946 of the wine made from the 1945 crush. These earnings represented, 50 per cent to each, or $101,056.91 to each, compensation and salary to Robert Azevedo and Paul Kershaw, Jr., respectively, for his services in the operation and management of the business known as Mills Winery, and for their respective services in the making and selling of wine from the 1945 crush during the period January 1 to August 6, 1946; these net earnings were not the earnings of the corporation, Mills Winery, Inc. Each petitioner omitted from the gross income reported in his and her individual return for 1946, an amount properly includible therein which is in excess of 25 per cent of the amount of gross income stated in the individual return. The Commissioner determined that the earnings from the operation of the business known as Mills Winery for the period from January 1 to August 6, 1946, were taxable to Robert Azevedo and Paul Kershaw, Jr. He determined that the net profit from the operation of the Mills Winery business during the above-stated period amounted to $202,113.82 and that 50 per cent thereof was taxable to Robert and to Paul in the amount *209 of $101,056.91, each. The Commissioner also determined that Robert was entitled to deduction for a short-term capital loss on the sale of 10,000 shares of capital stock of Mills Winery, Inc. The Commissioner's determination of the amount of the net profit from the operation of the Mills Winery business for the abovestated period, as set forth in the statement attached to the notices of deficiency, is as follows: "Statement of Income
Mills Winery
Jan. 1, 1946 through Aug. 6, 1946
"Sales
$693,114.80
Cost of Sales
445,467.09
Gross Profit
$247,647.71
Total Expenses
45,533.89
Net profit
$202,113.82
Distributable
Robert Azevedo
$101,056.91
Paul Kershaw, Jr.
101,056.91
$202,113.82"
In determining the amount of the short-term capital loss on the sale of 10,000 shares of capital stock of Mills Winery, Inc., in the case of Robert Azevedo, the Commissioner computed the amount of the loss in the following way: "Cost basis of 10,000 shares
of Mills Winery, Inc., cap-
ital stock acquired by you
on August 6, 1946
$101,056.91
Selling Price of stock on
October 5, 1946
50,000.00
Short-term capital loss on
sale
$ 51,056.91
Allowable deduction for cap-
ital loss (limited to $1,000
under provisions of sec-
tion 117(d)(2) of the In-
ternal Revenue Code)
1,000.00
Capital loss on sale of stock
claimed on your return
None
Decrease in gross income
$ 1,000.00"
*210 The facts which have been stipulated which are not set forth above are found in accordance with the stipulation. Opinion The chief question is whether the net income from the sales of wine which were made during the months March through June 1946, the wine having been made from the 1945 crush, is taxable to Robert Azevedo and Paul Kershaw, Jr., as the Commissioner has determined, or whether the income is taxable to the corporation, Mills Winery, Inc. If it is determined that one-half of the income in question, $202,113.82, is the income of Robert and Kershaw in equal amounts, it follows that each of the petitioners, Robert, Kershaw, and Irene, omitted from the gross income which each reported in his and her return an amount properly includible therein which is in excess of 25 per cent of the amount of gross income stated in the return, and therefore the provisions of section 275(c), 1939 Code, apply and the deficiencies are not barred. The evidence in this proceeding consists of a stipulation of facts, exhibits, and the testimony of Kershaw and Burnstein. Neither John nor Robert Azevedo testified or appeared during the trial of these cases. All of the evidence has been considered *211 carefully, as well as the arguments of counsel for the parties. The facts which have been stipulated largely are facts which are involved in the theory of the petitioners. The respondent relies chiefly upon the agreement of December 1, 1945 between John, who is designated the seller, and Robert and Kershaw, who are designated the purchasers. The respondent, too, relies upon the facts relating to the various steps which were taken in organizing the Mills Winery corporation and particularly upon the dates on which the various steps were taken. Petitioners contend that from about August 1, 1945 until about March 1, 1946, Robert and Kershaw were co-partners, doing business under the name of Mills Winery, and that the activities of the co-partners consisted in the purchase of grapes in the fall of 1945 and the making of wine from the crush in preparation for the sale of the wine in bulk on the open market in 1946; that on March 4, 1946, the corporation, Mills Winery, Inc., was organized and purchased from Robert and Kershaw the net worth of the partnership, acquired the partnership assets and assumed partnership liabilities; that the partnership assets consisted primarily of a wine inventory *212 and that the liabilities were primarily those that arose from bank loans obtained to finance the 1945 crush together with the cost of several improvements to the winery which were made during the 1945 crush plus an obligation of $100,000 to John Azevedo. The petitioner contend further that immediately after its incorporation, the corporation commenced corporate business activities and that Kershaw, as an officer of the corporation, sold the wine from the 1945 crush on behalf of the corporation, and therefore that the income realized from the sale of the wine was the income of the corporation rather than the income of Robert and Kershaw. The petitioners contend also that the deficiencies are barred. The corporation received from the Alcohol Tax Unit of the Bureau of Internal Revenue the basic permits to produce wine and distill spirits, effective August 7, 1946. This date provides the explanation for the Commissioner's determination in the deficiency notices that August 6, 1946 is the end of a taxable period during which Robert and Kershaw earned income in the amount of $202,113.82. The parties used the date, August 6, 1946, as a critical date and petitioners' argument relates, in part, *213 to the period March 4, 1946 to and including August 6, 1946. The petitioners take the view that the corporation acquired an inventory of wine on March 4, 1946. Since the sales of the wine which is involved under this issue were made during the 4-month period, March through June 1946, the petitioners contend that the sales were made by the corporation. Upon thorough consideration of the arguments of petitioners' counsel and of the entire record, the contentions of the petitioners are found to be strained and seriously impaired by the absence of evidence to establish that what the petitioners argue took place actually occurred. Moreover, there have been established several facts relating to the organization of the corporation which militate against the contentions of the petitioners. The facts and circumstances which are adverse to the petitioners are set forth hereinafter. The entire record supports the determinations of the Commissioner and it is concluded that the total net income derived from the sales during the months of March through June 1946 of the wine made from the 1945 crush was the income of Robert and Kershaw in equal amounts of $101,056.91. This conclusion must be reached *214 because of the facts relating to what was done. The theory of the petitioners is founded, largely, upon what might have been but was not done, as well as upon facts relating to a business which eventually was carried on by the corporation which had nothing to do with the sales of the wine which is involved. The issue to be decided involves basically the principle that earned income is taxable to the person who earns it, and income produced by property is taxable to the person who owns the property at the time the income is produced. . A tax cannot be escaped "by anticipatory arrangements and contracts however skillfully devised." It is true that a distinction is made between a gift or transfer of earnings by the person who has earned income or otherwise created the right to receive it and enjoy the benefit of it when it is paid, ; ; , and income produced by property after the ownership thereof has been conveyed to another, . In these cases the above distinction *215 has been taken into account and the facts have been scrutinized to determine whether the rule of , applies rather than the rule of Our conclusion is that the facts bring these cases under the rule of Stated simply, the situation was as follows: John, the father of Robert, was engaged in the construction business before and during 1945 and thereafter. He owned the Mills Winery property but he had leased it to a wine producer, Christian Brothers Winery, and he did not have the Federal and state basic permits to make wine and distilled spirits. His son, Robert, had become a winemaker by training and it appears that John was ready to set his son up in business but Robert had no capital. Under these circumstances John was willing to assist Robert and Kershaw to the extent of having them take over the operations and management of the Mills Winery, borrow the required capital to purchase grapes and finance the first crush, and allow Robert and Kershaw as their compensation for their personal services the entire net earnings of the Mills Winery during the period of their management. *216 John was willing to sell the winery property and improvements to Robert and Kershaw for the adjusted basis to John which was, at the end of 1945, $100,000. It was not inconceivable that the gross proceeds from the sale of the wine made from the 1945 crush would be large enough to repay the bank loans, the amount of which entered into the cost of the wine, and to yield net earnings of $100,000 or more. Kershaw was a salesman and Robert was a winemaker. There was no written partnership agreement between Robert and Kershaw. Under the written agreement of December 1, 1945 with John, however, they were to operate the winery for John in consideration of the receipt of salary and compensation for their services. The written agreement of December 1, 1945 is controlling. The agreement is clear and unambiguous. The agreement is a purchase and sale agreement in which John is the seller and Robert and Kershaw are the purchasers. The agreement provides that the purchasers shall operate and manage the winery beginning on January 1, 1946 until such time as the purchasers shall be permitted to receive in their name the basic permits which would enable them to operate the winery, i.e., manufacture *217 wine and distilled spirits under Federal and state regulations. The agreement provided that until such time as the purchasers should be able to make the actual purchase of the winery, they should receive compensation for their services to consist of the earnings of the business during the period of their management. The agreement of December 1, 1945, with respect to the sale of the winery premises, was an executory contract. The Federal and state basic permits to make wine and distilled spirits were not issued until August 1946. Until that time the condition precedent upon which the actual sale and purchase of the winery depended did not come into existence. Although Robert and Kershaw caused a corporation to be organized on March 4, 1946, there was no written assignment by Robert and Kershaw of their interests in the agreement of December 1, 1945, to the corporation and there was no written evidence of assumption by the corporation of any of the obligations of Robert and Kershaw as purchasers of the real estate and improvements making up the winery premises under the written agreement of December 1, 1945. All that we have is the self-serving testimony of Kershaw that the corporation *218 took over what is referred to as the winery business and the inventory of wine. The assertion of Kershaw that the sales of wine in the months March through June 1946, were made on behalf of the corporation is not supported by any independent proof that this was a fact. For example, books and records of the corporation were not introduced in evidence. There was no bill of sale from either Mills Winery, the sole proprietorship, or from John Azevedo to the corporation of the inventory of the wine made from the 1945 crush. There was no sale of the wine inventory to Robert and Kershaw before the wine was sold and they could not convey the wine inventory to the corporation. Issuance of stock of the corporation was not authorized and issued until October 2, 1946, which was after the wine which is in question had been sold. The mere statement in the corporation income tax return for the period March 4, 1946 to March 3, 1947, which was prepared for the corporation that the corporation had an inventory in the amount of $445,467.09 on March 4, 1946, is not competent proof that the corporation in fact acquired and owned the inventory of wine which was sold during March through June 1946, from *219 which sales the income in question was derived. Such statement in the original and amended corporation returns is self-serving. The agreement of December 1, 1945 did not provide for the sale to Robert and Kershaw of an inventory of wine; the agreement related only to the sale of the winery real estate and improvements. This conclusion is reached from consideration of all of the provisions of the agreement. It is noted that the agreement stated in paragraph 1 that "seller will sell to purchasers that certain winery known as Mills Winery, located at Mills Junction, California, together with all the assets pertaining thereto for the adjusted cost of said winery, plus all other of said winery, including inventory at cost price." But the sale agreement was an executory agreement, the seller to remain the owner of the winery, assets and inventory "until such time as the purchasers shall be permitted to receive in their name certain basic permits which will enable them to purchase and own said winery and operate the same * * *." Furthermore, it was mutually agreed and understood by the parties "that unless the above mentioned permits are issued in the names of purchasers on or before January 1, 1947, this *220 agreement shall at the option of seller be declared null and void." It can only be concluded that under the terms of the agreement ownership of the inventory of wine produced from the 1945 crush remained in John Azevedo during the months when the wine was sold, and since all the wine was sold before the Federal and state basic permits were issued to Robert and Kershaw, or to the corporation, it cannot be concluded that Robert and Kershaw owned the inventory of wine which they contend they conveyed to the corporation as of March 4, 1946. It is held that the corporation did not own the inventory of wine which was sold in March through June 1946. It is held, further, that the inventory of wine which was sold was owned by John Azevedo when the sales were made. Under the above holdings, the position of the petitioners amounts to an effort to have the earnings produced by the sales of the wine taxed to the corporation. Such condition cannot be sustained under the rule of ; ; and The corporation did not own the property - the wine - before the income derived from the sales thereof *221 came into being. The rule of the Blair case does not apply. The inventory of wine, which was owned by John Azevedo, was sold and the bank loans which he had obtained were repaid out of the proceeds of the sales; other expenses were paid out of the proceeds of the sale; and under the provisions of paragraph 3 of the agreement of December 1, 1945, Robert and Kershaw had the right to the net proceeds of the sales as their salaries for their personal services in managing and operating the sole proprietorship business of John Azevedo and in making and selling the wine produced during the period of management by Robert and Kershaw. It is presumed that Robert and Kershaw received, one-half each, the net proceeds from the operation of the winery business, in the total amount of $202,113.82. Petitioners have not shown that they did not receive the income or that they did not have dominion and control over the income. There is no proof that all or part of the net earnings of the winery derived from the sales of the inventory of wine during March through June 1946 came into the possession of the corporation. For example, there was no bank account opened in the name of the corporation as of *222 March 4, 1946. Furthermore, the authority to draw checks on the bank account of the winery business remained exclusively in John until August 1946 and until then petitioners had no anthorization to make withdrawals from the account. We do not have in evidence any checks of buyers of the wine in question made payable to the corporation. But even if the net proceeds from the sale of the wine had been paid to and come into the possession of the corporation, that would amount to no more than an anticipatory arrangement whereby the income in question, earned by Robert and Kershaw, was received by the corporation rather than by the individuals who earned the income, and such arrangement would not serve to relieve Robert and Kershaw from tax on the income. There are facts in the Findings which relate to the operations of the corporation. At the time of the trial of these cases the corporation was still in existence and it apparently has carried on a business of its own. But these facts are immaterial in deciding the question before us. It is unnecessary to point out other factors which are adverse to the petitioners because they are only cumulative. The Commissioner's determinations *223 are sustained. It is unnecessary to consider an alternative contention of the Commissioner in view of the conclusions reached above. Petitioners contend that the Commissioner had the burden of proof under the chief issue and they cite . This contention of the petitioners is based upon the fact that the deficiencies were not determined within the normal 3-year period of limitations and the Commissioner is relying upon the 5-year period provided by section 275(c). We are satisfied that the respondent has met his burden of proof. Cf. , affd. . The petitioners contend that the deficiencies are barred because the agreements extending the period for assessment were executed more than 3 years after the filing of the income tax returns. The income tax returns of the petitioners were filed on March 7 and March 15, respectively, of 1947. The agreements extending the period for assessment to June 30, 1953, were executed, respectively, on January 22, 1952 and February 26, 1952. These dates were within 5 years from the dates of the filing of the income tax returns *224 of the petitioners. The same question was presented in , et seq. reversed on another ground, . This Court held that since the taxpayer had omitted from gross income an amount which was in excess of 25 per cent of the gross income stated in the return for the taxable year, a period of 5 years from the date the return was filed was allowed for making assessment of the tax, and that since the agreements extending the period for assessment had been executed prior to the expiration of the 5-year period, and since the deficiency notice was mailed to the taxpayer before the expiration of the extended period, the deficiency notice was timely and the period for assessment of the taxpayer's income tax liability had not expired. The question is controlled by It is held that the deficiencies are not barred. Decisions will be entered for the respondent. Footnotes
1. Docket No. 49928, Irene Kershaw, and Docket No. 49929, Paul Kershaw, Jr., have been consolidated with Docket No. 49896.↩